**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ALEJANDRO DOROTEO-CHAVEZ,

Petitioner,

v.

KRISTI NOEM, *et al.*,

Respondents.

Case No. 2:26-cv-00049-RFB-DJA

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Alejandro Doroteo Chavez's Amended Petition for Writ of Habeas Corpus (ECF No. 19) [hereinafter "Amended Petition"] and (ECF No. 15) Second Motion for Preliminary Injunction. For the following reasons, the Court grants the Amended Petition and dismisses the Motion for Preliminary Injunction as moot.

### I.    BACKGROUND

Petitioner Alejandro Doroteo Chavez is a 50-year-old Mexican citizen who has resided continuously in the United States for three decades. See Respondents' Return to Amended Petition, January 13, 2026 Order of the Immigration Judge, Ex. A, ECF No. 29-2 at 8–16 [hereinafter "IJ Merits Order"]. He entered the United States without inspection sometime in 1995 or 1996. Id. Since then, he has continuously resided in this country's interior and established robust familial, financial, and community ties. Id. Prior to his detention, he resided at a fixed address with his 20-year-old U.S. citizen child and provided financial support to her and his long-term partner, working as a self-employed mechanic. Id. He has three sisters living in the U.S. and three brothers living in Las Vegas, one of whom is a U.S. Citizen. Id.

Petitioner was detained by Immigration and Customs Enforcement ("ICE") after being

arrested by municipal police officers. Id. at 2–4 (Form I-213 Record of Deportable/Inadmissible Noncitizen). On October 11, 2025, the North Las Vegas Police Department arrested Petitioner for misdemeanor domestic battery. Id. He was transported to the City of North Las Vegas Detention Center ("CNLVDC"), see id., and CNLVDC promptly informed ICE that it had arrested Petitioner. See id. Shortly thereafter, ICE issued an immigration detainer so that it could detain Petitioner as soon as he was released from municipal custody. See id. On October 13, 2025, Petitioner was released from CNLVDC on a bond of $ 50, id. at 5, immediately arrested and detained by ICE, and placed in removal proceedings on a charge that he is inadmissible as a noncitizen "present in the United States without being admitted or paroled." See id. at 4 (referring to 8 U.S.C. § 1182(a)(6)(A)(i)). He was subsequently transported to Henderson Detention Center, where he remains detained to this day, over five months later. It is unclear from the record whether Petitioner's criminal charge remains pending; beyond that he has no criminal convictions or other criminal history.

While detained, Petitioner filed a counseled motion for custody re-determination and bond on December 2, 2025. See generally ECF No. 1-4 at 4 (Petitioner's motion for a custody re-determination before the Executive Office of Immigration Review ("EOIR")) [hereinafter, "Bond Motion"]. In it, Petitioner presented evidence of his (1) fixed address; (2) length of residence; (3) family ties; (4) self-employment; (5) record of appearing in court; (6) lack of criminal convictions; (7) lack of attempts to flee prosecution or escape authorities at any time; and (8) manner of entry in the country. Id. at 6.

In response, Federal Respondents maintained, and continue to maintain, that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and thus cannot be considered for release on bond. See ECF No. 10 at 13–14; Respondents Return to Amended Petition, ECF No. 20 at 3–7. This novel (re)interpretation of the Immigration and Nationality Act (INA)—specifically 8 U.S.C. § 1225(b)(2)(A)—constitutes the executive branch's policy to subject all noncitizens who entered the country without inspection to mandatory detention, in contravention decades of consistent agency practice and current regulations, which previously guaranteed similarly situated noncitizens the opportunity to be released on bond under 8 U.S.C. § 1226(a). See Jacobo Ramirez

v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *8–9 (D. Nev. Mar. 30, 2026). The Board of Immigration Appeals (BIA) formally adopted this reinterpretation of longstanding immigration law through a precedential decision which requires immigration judges to categorically reject bond for people like Petitioner. See id. (citing Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado")). This Court has exhaustively considered the government's interpretation of § 1225(b)(2)(A), declared it unlawful as to a certified class of noncitizens, including Petitioner, and vacated Hurtado under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), as unlawful under the INA and its implementing regulations. See generally Jacobo Ramirez, 2026 WL 879799.

Pursuant to Hurtado, on December 8, 2025, an Immigration Judge for the Las Vegas Immigration Court denied Petitioner bond because she lacked jurisdiction under Hurtado. See ECF No. 1-3 at 2 ("Immigration Judges lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission.") (citing Hurtado). In doing so, the IJ declined to make any individualized findings as to Petitioner's dangerousness and/or flight risk. See id.

On January 9, 2026, Petitioner commenced this action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, and a concurrently filed Motion for Preliminary Injunction. See ECF Nos. 1, 2. He challenged the lawfulness of his detention since October 13, 2025 without a bond hearing as both unlawful under the INA and unconstitutional under the Due Process Clause of the Fifth Amendment. See id.

On January 12, 2026, the Court issued an Order to Show Cause ("OSC") to Respondents to provide a written response explaining why the Motion for Preliminary Injunction should not be granted. See ECF No. 5. The same day, the IJ held an individual hearing on the merits of Petitioner's removability, and (1) denied Petitioner's application for Cancellation of Removal for Nonpermanent Residents; but (2) granted voluntary departure at the conclusion of removal proceedings. See IJ Merits Order, ECF No 20-2. DHS waived the right to appeal that decision, while Petitioner reserved appeal. Id. at 17. On January 27, 2026, Petitioner timely appealed that decision, and the appeal remains pending before the BIA. See Executive Office for Immigration

Review (EOIR) Automated Case Information for Petitioner available at https://acis.eoir.justice.gov/en/ (last visited March 20, 2026).

Federal Respondents filed their Response to the OSC on January 23, 2026. See ECF No. 10. On January 28, 2026, the Court granted the Motion for Preliminary Injunction and ordered Federal Respondents to provide Petitioner with a bond hearing pursuant to § 1226(a) no later than February 2, 2026, or release him from custody. See ECF No. 11. On February 2, 2026, the Immigration Court held a bond hearing, as ordered, and again denied bond. See ECF No. 12-1. The Order of the Immigration Judge indicated bond was denied because:

> Pursuant to a District Court Order, the Court held a custody redetermination hearing. The respondent's removal hearing has been held and his 42B Cancellation of Removal application was denied. The respondent was granted post conclusion voluntary departure and he reserved appeal. The respondent has not demonstrated he is not a flight risk.

See Federal Respondents' Status Report, Ex. A, Bond Order ECF No. 12-1. Based on the IJ's Order and the government's representation, it does not appear the government asserted Petitioner is dangerous. In any case the IJ made no finding of dangerousness.

On February 26, 2025, Petitioner sought leave to amend his petition and filed a Second Motion for Preliminary Injunction. ECF Nos. 14, 15. On March 4, 2026, the Court granted leave to amend, and Petitioner's Amended Petition was filed. ECF No. 19. In his Verified Amended Petition, Petitioner asserts the bond hearing was constitutionally deficient under the Due Process Clause based on the complete absence of factual findings, analysis of relevant factors, or evidence considered by the IJ. Id. at 18-19. Petitioner also asserts the IJ's denial of bond was unlawful under § 1226(a) and its implementing regulations. Id.

Federal Respondents' *uncertified* Return to the Amended Petition provides an account of what occurred at the bond hearing with no affidavit or evidence in support of that account.[1] See Return, ECF No. 20 at 7-9. Per Federal Respondents' account, the denial of bond was statutory

---

[1] It is unclear how counsel for Federal Respondents has knowledge of what occurred at the hearing—if he listened to a recording of the hearing, he has violated this Court's OSC by failing to attach evidence referenced and relied upon in Respondents' Return. See ECF No. 18. As discussed below, see supra-Section II, under the standards governing fact finding in § 2241 matters, the Court cannot accept the government's uncertified and unsupported factual allegations as true, where they contradict the allegations in the *verified* Amended Petition.

and constitutionally adequate because the evidentiary burden was on Petitioner to establish that he is neither dangerous nor a flight risk, and "he did not present any evidence or testify to anything relevant to that matter." Id. at 7.

The Court cannot credit this account without evidence, such as a sworn statement by someone with personal knowledge of the proceedings, or a transcript or recording of the proceedings. However, if Respondents' representation is accurate, the Court notes the bond proceeding may have been constitutionally defective on a separate ground independent of those asserted by Petitioner: due to ineffective assistance of counsel, because according to the government, the denial of bond was based on his counsel's failure to present *any* evidence in support of his release, where the evidentiary burden was on Petitioner. See Hernandez-Ortiz v. Garland, 32 F.4th 794, 802 (9th Cir. 2022) (Ineffective assistance of immigration counsel violates due process where counsel's conduct effectively prevented the petitioner from pursuing relief). Yet this evidence was available and previously submitted and considered by the IJ, both in his prior bond motion, and as evidenced by the IJ's Merits Order which found Petitioner has substantial familial and financial ties to the United States after thirty years of residence. See Return, Ex. A, Merits Order, ECF No. 20-1. A complete failure of Petitioner's counsel to present evidence in support of his request for relief from bond would likely amount to a violation of due process. See, e.g., Correa-Rivera v. Holder, 706 F.3d 1128 (9th Cir. 2013) (finding ineffective assistance of counsel in removal proceedings where the noncitizen's attorney failed to timely submit briefing and evidence in support of an application for relief and it was denied on that basis). However, the Court need not reach this issue because, as discussed below, it finds the IJ's bond determination was an abuse of discretion, and the allocation of the evidentiary burden on Petitioner to prove that he was not dangerous or a flight risk was constitutionally defective. The Court thus grants the Amended Petition on that basis.

## II.   STANDARD OF REVIEW

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an

effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968) (citations omitted). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citations omitted). Federal courts "have a time-tested device, the writ, to maintain the 'delicate balance of governance that is itself the surest safeguard of liberty." Boumediene v. Bush, 553 U.S. 723, 745 (2008) (quoting Hamdi, 542 U.S. at 536). The writ protects against "arbitrary imprisonments," which "have been, in all ages, the favorite and most formidable instruments of tyranny." Id. at 744 (quoting the Federalist No. 84 (Alexander Hamilton). This Court has jurisdiction to grant writs of habeas corpus to noncitizens who are being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention").

Although habeas corpus is "civil in nature[,] and the petitioner bears the burden of proving that his detention is illegal[,]" Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950), the mechanics of habeas proceedings are unique. See Harris v. Nelson, 394 U.S. 286, 294–95 (1969). When a court confronts a viable habeas petition, it must either award the writ or order respondent(s) to show cause why the writ should not be granted—*i.e.*, to "make a return certifying the true cause of [ ] detention." 28 U.S.C. § 2243; see also Harris, 394 U.S. at 298–99 (citation omitted). Since habeas petitions must be verified, see 28 U.S.C. § 2242, their undisputed factual allegations should be taken as true. See Carlson, 186 F.2d at 188 (quoting Whitten v. Tomlinson, 160 U.S. 231, 242 (1895)) (citations omitted). Similarly, the *certified*, undisputed allegations of respondent(s) should also be accepted as true unless they are contradicted by relevant evidence. See Carlson, 186 F.2d at 188.

### III.    DISCUSSION

#### A.  Jurisdiction

As discussed in its Order Granting a Preliminary Injunction, the Court continues to find it

has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention because the relevant jurisdiction stripping provisions of the INA, codified at 8 U.S.C. § 1252, do not apply here. See ECF No. 11 at 3-6. The Court incorporates by reference its previous finding that §§ 1252(g) and (b)(9) do not apply under binding Supreme Court and Ninth Circuit precedent, which Federal Respondents continue to fail to address.

Although Respondents do not raise it, the Court also considers whether 8 U.S.C. § 1226(e) deprives the Court of jurisdiction to review the constitutional adequacy of Petitioner's bond hearing and the IJ's denial of bond. See United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 967 (9th Cir. 2004) ("[A] district court ha[s] a duty to establish subject matter jurisdiction . . . whether the parties raised the issue or not.").

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted); see also Martinez v. Clark, 124 F.4th 775, 781 (9th Cir. 2024) (citing Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011) ("§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges or preclude a district court from addressing a habeas petition challenging the statutory framework that permits the petitioner's detention without bail.") (alterations in original) (citations and quotation marks omitted). For example, Petitioner's claim that "the standard of proof applied in his [bond] hearing" was unconstitutional is "cognizable in habeas despite the jurisdictional restrictions in § 1226(e)." Hernandez, 872 F.3d at 988 (citing Singh, 638 F.3d at 1203).

As the Ninth Circuit recently clarified, after the Supreme Court vacated its judgment, which relied on § 1226(e) to find that a district court lacked habeas "jurisdiction to review a BIA determination that an alien was a 'danger to the community' for immigration detention purposes," § 1226(e) "'restricts jurisdiction only with respect to the executive's exercise of discretion' but that discretionary judgment does not include constitutional claims or questions of law." Martinez v. Clark, 124 F.4th 775, 779 (9th Cir. 2024) (citing Singh, 638 F.3d at 1203). Further, "[t]he

determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" Id. (citing Wilkinson v. Garland, 601 U.S. 209 (2024)). While the Ninth Circuit did not explicitly reach the question of whether a flight risk finding is similarly reviewable, its logic, and the Supreme Court's ruling as to the "boundaries of judicial review in the immigration context" in Wilkinson, clearly extends to a flight risk finding as "[t]he application of a statutory legal standard . . . to an established set of facts" *i.e.*, a quintessential mixed question of law and fact." Wilkinson, 601 U.S. at 212.

Accordingly, the Court finds it has jurisdiction to review Petitioner's bond hearing for its compliance with due process, and the IJ's denial of bond based on a flight risk finding as a mixed question of law and fact.

### B.   Administrative Exhaustion

Federal Respondents argue that the Court should decline to review Petitioner's habeas challenge where he failed to exhaust his administrative remedies by appealing the IJ's bond determination to the BIA and awaiting its decision. See Return at 8, ECF No. 20. "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the INA require petitioners to exhaust administrative remedies before filing petitions for habeas corpus, so administrative exhaustion here is prudential and the Court has discretion to waive it. Id. (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).

A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000.

First, as to Petitioner's due process challenge to the allocation of the evidentiary burden on Petitioner to prove that he is not dangerous or a flight risk, rather than on the government to justify his detention by clear and convincing evidence, the BIA cannot resolve that challenge. The BIA cannot correct that alleged procedural error under its own precedent, which holds the evidentiary burden to prove lack of dangerousness or flight risk in a bond hearing is on Petitioner, not the government. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (explaining that in a bond hearing under § 1226(a) a detainee must "demonstrate[ ] by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,'" to obtain release) (quoting Matter of Guerra, 24 I. & N. Dec. 37, 50 (B.I.A. 2006).

Petitioner's due process claim thus falls into the futility exception to the exhaustion requirement "carved for constitutional challenges to . . . [DHS] procedures." Iraheta-Martinez v. Garland, 12 F.4th 942, 949 (9th Cir. 2021) (quoting Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013) (per curiam) (alterations in original). As to procedural due process claims in particular, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Sola, 720 F.3d at 1135; see also Matter of G.K., 26 I. & N. Dec. 88, 96-97 (BIA 2013) (explaining that "[n]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]"). So, exhaustion of Petitioner's administrative remedies would be futile. See Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.")

Further, requiring Petitioner to remain in detention pending the BIA's decision would cause irreparable harm, which is a separate basis to waive exhaustion. See Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing). The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention."

Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017) ("For example . . . subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained."). According to data released by the Executive Office for Immigration Review, the average processing time for bond appeals in 2024 exceeded 200 days. Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025). As of the end of fiscal year 2025, the BIA had 202,946 total pending appeals—a significant backlog which indicates bond appeals will take longer than the average 200-day period in 2024. See EOIR Adjudication Statistics, All Appeals Filed, Completed and Pending, https://www.justice.gov/eoir/media/1344986/dl?inline (last visited March 23, 2026). In addition to the irreparable harms Petitioner suffers each day in immigration detention, where a constitutionally adequate bond hearing could result in his release, Petitioner's claim regarding the IJ's bond determination would become moot while he awaits the BIA's review of the IJ's denial of bond, in the event his removal order becomes final. Thus, requiring Petitioner to await the resolution of a bond appeal could preclude meaningful review of the bond determination.

For these reasons, district courts in this Circuit "routinely" waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals. Rodriguez, 779 F. Supp. at 1253–54 (collecting cases). The Court thus finds waiver of prudential exhaustion is appropriate in this case.

### C. Statutory Detention Authority

As an initial matter, Respondents continue to invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention, see generally Return at 3, ECF No. 20, despite the fact this Court, and all other judges within the district to consider the issue, has repeatedly, and decisively, rejected it as unlawful. See, e.g., Jacobo-Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2026 WL 310090 at *1, n. 1 (D. Nev. Feb. 5, 2026) (collecting over sixty cases as of February 5, 2026); see also Baca Beltrand v. Mattos, No. 2:25-CV-01430-CDS-EJY, 2025 WL 3205283 (D. Nev. Nov. 14, 2025); Hernandez-Luna v. Noem, No. 2:25-CV-01818-GMN-EJY, 2025 WL 3102039 (D. Nev. Nov. 6, 2025).

Moreover, Petitioner is a member of the certified class in Jacobo-Ramirez, 2026 WL 879799 at \*33. Therefore, consistent with the Court's classwide declaratory judgment, the Court finds Petitioner is subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1 & 1003.19; is not subject to detention under 8 U.S.C. § 1225(b)(2)(A); and is thus entitled to consideration for release from detention on bond and/or conditions by immigration officers and immigration judges.

### D. Abuse of Discretion

The Court now turns to the question of whether the IJ's denial of bond was legally erroneous. The IJ denied bond based solely on the following finding: "his removal hearing has been held and his 42B Cancellation of Removal application was denied. The respondent was granted post conclusion voluntary departure and he reserved appeal. The respondent has not demonstrated he is not a flight risk." See ECF No. 12-1.

In Martinez, the Ninth Circuit clarified that, in the context of a district court in habeas reviewing the denial of bond by an IJ and the BIA, "'factual question[s] raised in an application for discretionary relief'' remain unreviewable." 124 F.4th at 782-83 (citing Wilkinson v. Garland, 601 U.S. 209, 222 (2024)). This includes underlying factual determinations such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." Id. at 783. However, a finding of dangerousness or flight risk based on those factual determinations involves the application of "a legal standard" "to a given set of facts" which is reviewable "for an abuse of discretion" by federal courts in habeas. Id. at 784 (citing Konou v. Holder, 750 F.3d 1120, 1127 (9th Cir. 2014). Under this standard, courts "cannot reweigh evidence . . . [but] can [only] determine whether the [IJ] applied the correct legal standard." Id. (citing Konou, 750 F.3d at 1127) (alterations in original). This includes whether the IJ "properly considered the factors set forth in" In Re Guerra, 24 I. & N. Dec. 37 (BIA 2006). Id. Under Guerra, to determine whether a noncitizen "is a danger to the community or a risk of flight, an IJ weighs "nine factors" including "any or all of the following":

whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in

- 11 -

court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Id. at 784 (citing Guerra, 24 I. & N. Dec. at 40).

Here, based on the record, the IJ's decision did not reference or reflect consideration of any of the above factors. Unlike in Martinez, where the Ninth Circuit found the immigration judge "evaluated [petitioner's] mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support," 124 F.4th at 780, the IJ here did not provide the basis for the bond determination based on the relevant factors, and denied bond based only on the conclusory statement that Petitioner "has not demonstrated he is not a flight risk." This constitutes abuse of discretion. See, e.g., Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "failing to consider all of the relevant factors").

Moreover, the IJ appears to have found Petitioner was a flight risk based solely on the fact that he was denied cancellation of removal, and he had reserved appeal. But in Singh, the Ninth Circuit held an IJ's bond determination was constitutionally deficient where "the only evidence . . . cited for . . . the IJ's conclusion that [the petitioner] was a flight risk was the fact" the petitioner "had already been ordered removed by a final, administrative order, diminishing his incentive to appear for further removal proceedings." Singh v. Holder, 638 F.3d 1196, 1205 (9th Cir. 2011). The Court found that consideration alone, which was common to most noncitizens subject to prolonged detention during removal proceedings, was not sufficient evidence of flight risk to justify the denial of bond. See id. Thus, based on the record here, the Court finds the denial of Petitioner's release on bond was legally erroneous and an abuse of discretion.

### E. Evidentiary Burden

The Court further finds the IJ's bond determination was legally erroneous on a separate basis: the burden of proof was improperly placed on Petitioner to establish he was not dangerous or a flight risk, rather than on the government to justify his detention by clear and convincing

evidence. In the Court ordered bond hearing pursuant to § 1226(a), Federal Respondents confirm that "the burden [was] on [] Petitioner to demonstrate he is not a flight risk." Return at 7, ECF No. 20. DHS did not present any individualized evidence that Petitioner was a flight risk but rather argued that because Petitioner was granted voluntary departure, has a pending appeal, and has no further court hearings, he is categorically a flight risk. See id. In Singh, the Court held that bond hearings must be held before a neutral immigration judge "with the government bearing the burden of proof by clear and convincing evidence." Rodriguez v. Robbins, 715 F.3d 1127, 1144 (9th Cir. 2013) (citing Singh, 638 F.3d at 1203-04). The Court finds, as a matter of due process, that the circumstances here demonstrate Petitioner has been detained for months in violation of his due process rights, such that the government should have been required to justify his continued detention by clear and convincing evidence. See Singh, 638 F.3d at 1203–04.

First, the Court notes Respondents have detained Petitioner while depriving him of "substantial" procedural protections which he is entitled to under § 1226(a) and its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). Initially, Petitioner was deprived of an "initial custody determination" by ICE, where he would have had the opportunity to obtain release on bond, or conditional parole, by demonstrating "that such release would not pose a danger to property or persons, and that [he] is likely to appear for any future proceeding." Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Given the fact that the government's only argument that Petitioner is a flight risk was based on the IJ's denial of relief from removal, which occurred several months after he was initially detained, the record demonstrates Petitioner would likely have been released from detention had he been afforded that process at the outset.

Second, Petitioner was deprived of an opportunity to seek review of that initial custody determination through a "prompt bond hearing" before an immigration judge. See id. at 210. Indeed, Petitioner submitted a motion for bond with substantial evidence of his decades of residence, deep family and financial ties, fixed address, and lack of criminal convictions, but the IJ declined to even consider that evidence due to the government's unlawful detention policy under § 1225(b)(2)(A). The IJ only considered Petitioner's individual circumstances after this Court

intervened—and notably made no mention of the relevant evidence that Petitioner is *not* a flight risk. Instead, the IJ relied solely on the fact that Petitioner's removal proceedings have progressed to review by the BIA—a fact which itself is the product of Petitioner's prolonged detention without process. This Court finds "[a] bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in most, if not all, cases" where noncitizens have been subject to the government's unlawful detention policies. See Argueta-Portillo v. Bondi, 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026).

Petitioner's circumstances thus demonstrate that a clear and convincing evidence standard, with the burden of proof on the government, provides the appropriate level of procedural protection given the "substantial liberty interests at stake." See Singh, 638 F.3d at 1203–04; Martinez, 124 F.4th at 785 ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [a detained noncitizen] is a danger to the community"). Moreover, alternative release conditions sufficient to ensure Petitioner's attendance at future removal proceedings must be considered. See Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Here, the Court finds the IJ's placement of the evidentiary burden on Petitioner and failure to consider alternative release conditions violated Petitioner's due process rights.

### F. Remedy

Having found Petitioner remains in detention in violation of his statutory and constitutional rights, the Court finds the appropriate remedy is a bond hearing where the burden to justify Petitioner's detention is shifted to the government. Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."). This remedy will directly address "the risk of error inherent in the truthfinding process," Mathews v. Eldridge, 424 U.S. 319, 344 (1976), which has only been exacerbated by Respondents' disregard for longstanding procedures, which they themselves developed—and generally adhered to—until

their recently adopted detention policy under § 1225(b)(2)(A).

The Court thus orders Respondents to promptly conduct a bond hearing for Petitioner wherein the government must prove, by clear and convincing evidence, that Petitioner's continued detention is justified —*i.e.* that his detention without bond and supervisory conditions is necessary to prevent danger to the community or ensure his appearance at removal proceedings. In conducting the hearing, the IJ must consider evidence submitted by Petitioner and carefully weigh the nine relevant factors under Guerra. See Martinez, 124 F.4th at 793. If there is doubt the government has conclusively proven dangerousness or flight risk, the IJ must consider Petitioner's financial circumstances as well as possible alternative release conditions in setting bond. See Hernandez, 872 F.3d at 990. The IJ must further create a contemporaneous record of the bond hearing that is available to Petitioner upon request, see Singh, 638 F.3d at 1208, and that is available to this Court so that it can ensure compliance with this Order—*i.e.*, the appropriate allocation of the burden of proof; the application of the correct evidentiary standard; and sound findings regarding danger and flight risk which do not amount to an abuse of discretion. See Martinez, 124 F.4th at 779.

Consistent with its broad equitable authority to fashion a remedy for unlawful detention "as law and justice require," the Court orders Respondents to provide a constitutionally adequate bond hearing promptly—*i.e.*, no later than **April 17, 2026**—or immediately release him from custody on his own recognizance with no substantial constraints on his liberty. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (internal quotation marks and citations omitted).

IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner Doroteo-Chavez's Amended Petition for a Writ of Habeas Corpus is **GRANTED.**

**IT IS FURTHER ORDERED** Petitioner's (ECF No. 15) Motion for Preliminary Injunction is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of establishing dangerousness or flight risk by clear and convincing evidence, and consistent with the other requirements described above, no later than **April 17, 2026**.

**IT IS FURTHER ORDERED** that if bond is granted, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioner from detention. The Court has received notice of the hardship other petitioners have incurred in their efforts to satisfy bond through ICE payment portals, and, therefore, **IT IS FURTHER ORDERED** that Petitioner be afforded until **May 15, 2026**, to satisfy any monetary bond conditions.

**IT IS FURTHER ORDERED** that if a constitutionally adequate bond hearing is not conducted by **April 17, 2026**, Respondents must **IMMEDIATELY RELEASE** Petitioner from custody on his own recognizance. This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that the Parties shall file a **JOINT STATUS REPORT** by **April 20, 2026**. The status report shall detail whether the bond hearing occurred, whether bond was granted or denied, and, if denied, the reasons for that denial. If bond was granted or the bond hearing has not occurred, the status report shall confirm the date and time of Petitioner's release from detention in compliance with this Order.

**IT IS FURTHER ORDERED** that if bond is denied, Federal Respondents must (1) **ATTACH** the order of the immigration court to the joint status report **AND** (2) **PROVIDE** the contemporaneous record of the bond hearing to Petitioner's counsel **IMMEDIATELY** upon request.

**The Clerk of Court is instructed to enter judgment accordingly and close this case.** The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen

this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14

**DATED:** April 16, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**